UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, A MASSACHUSETTS CORPORATION;<br><br>            Plaintiff,<br><br>     vs.<br><br>HAWAIYA TECHNOLOGIES, INC., A HAWAII CORPORATION; PAUL SCHULTZ, AN INDIVIDUAL; MUN-WON CHANG, AN INDIVIDUAL; PAUL SCHULTZ, AS CO-TRUSTEE OF THE PAUL S. SCHULTZ REVOCABLE TRUST; MUN-WON CHANG, AS CO-TRUSTEE OF THE PAUL S. SCHULTZ REVOCABLE TRUST; PAUL SCHULTZ, AS CO-TRUSTEE OF THE MUN-WON CHANG REVOCABLE TRUST; MUN-WON CHANG, AS CO-TRUSTEE OF THE MUN-WON CHANG REVOCABLE TRUST; AND DEBORAH P. SIMCOX, AS TRUSTEE OF THE JANE WON-IM CHANG REVOCABLE TRUST;<br><br>            Defendants. | CIV. NO. 23-00117 LEK-KJM |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF/COUNTER DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS DEFENDANTS HAWAIYA TECHNOLOGIES, INC., PAUL SCHULTZ, AND MUN-WON CHANG'S SECOND AMENDED COUNTERCLAIM, FILED AUGUST 28, 2023**

Before the Court is Plaintiff/Counter Defendant Liberty Mutual Insurance Company's ("Liberty Mutual") Motion to Dismiss Defendants Hawaiya Technologies, Inc., Paul Schultz, and Mun-Won Chang's Second Amended Counterclaim, Filed December 14, 2023 [Dkt. No. 43.] ("Motion"), filed on December 28, 2023.

[Dkt. no. 44.] Defendants/Counter Claimants Hawaiya Technologies, Inc. ("HTI"); Paul Schultz, both individually and as Co-Trustee of the Paul S. Schultz Revocable Trust and as Co-Trustee of the Mun-Won Chang Revocable Trust ("Schultz"); and Mun-Wong Chang, individually and as Co-Trustee of the Paul S. Schultz Revocable Trust and as Co-Trustee of the Mun-Won Chang Revocable Trust ("Chang" and all collectively "the HTI Defendants"), filed their memorandum in opposition on January 23, 2024. [Dkt. no. 46.] On February 6, 2024, Liberty Mutual filed its reply. [Dkt. no. 47.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). Liberty Mutual's Motion is hereby granted insofar as Counterclaim Count I is dismissed with prejudice and Counterclaim Counts II and III are dismissed, and denied insofar as Counterclaim Counts II and III are dismissed without prejudice.

## BACKGROUND

Liberty Mutual filed its Complaint on March 3, 2023. [Dkt. no. 1.] On April 6, 2023, the HTI Defendants filed their first Counterclaim Against Plaintiff ("Counterclaim"). [Dkt. no. 20 at pgs. 4-13.] This Court granted Liberty Mutual's motion to dismiss the first Counterclaim on July 13, 2023, granting

2

leave to file an amended counterclaim by August 28, 2023 ("7/13 Order"). [Dkt. no. 36.[1]] On August 28, 2023, the HTI Defendants filed their First Amended Counterclaim Against Plaintiff ("First Amended Counterclaim"). [Dkt. no. 37.] This Court granted in part and denied in part Liberty Mutual's Motion to Dismiss the First Amended Counterclaim on November 14, 2023, granting leave to file a second amended counterclaim by December 14, 2023 ("11/14 Order"). [Dkt. no. 42.[2]] On December 12, 2023, the HTI Defendants filed their Second Amended Counterclaim Against Plaintiff ("Second Amended Counterclaim"). [Dkt. no. 43.]

Many of the factual allegations in the Second Amended Counterclaim repeat the allegations in the First Amended Counterclaim. Compare First Amended Counterclaim at ¶¶ 4-18, 20, 22 with Second Amended Counterclaim at ¶¶ 4-11, 13-16, 18-20, 22, 25. In sum, during discovery in the prior action between Liberty Mutual and the HTI Defendants, Liberty Mutual failed to produce to the HTI Defendants redline and/or final drawings for the construction project at issue in the action.[3] During the 2018

---

[1] The 7/13 Order is also available at 2023 WL 4534421.

[2] The 11/14 Order is also available at 2023 WL 7552739.

[3] The prior action was Liberty Mutual Insurance Co. v. Hawaiya Technologies, Inc., et al., CV 18-00410 HG-RLP ("the 2018 Lawsuit"), see Second Amended Counterclaim at ¶ 14, and the project at issue in the 2018 Lawsuit was a construction project at the Halawa Correctional Facility regarding "Security Electronics & Hardware Repairs & Improvements" ("Halawa Project"), [id. at ¶ 4].

3

Lawsuit, HTI served Liberty Mutual with Defendant Hawaiya Technologies Inc.'s First Request for Answers to Interrogatories and First Request for Production of Documents to Plaintiff in March 2019 ("March 2019 Discovery Request"). [Second Amended Counterclaim at ¶ 18.] The March 2019 Discovery Request asked for "Documents" and "electronically stored information" as these terms are defined in Federal Rule of Civil Procedure 34. [Id.] Document Request No. 2 of the March 2019 Discovery Request asked Liberty Mutual to "[p]roduce all documents that support your conclusion in the Claim Determination Letter that HTI failed to timely address the issue of incorrectly installed couplings." [Id. at ¶ 19.] The HTI Defendants allege the issue of incorrectly installed couplings was "at the heart of the claimed 'defective work' on the Halawa Project[, and] HTI installed the couplings based upon designs given to them, which Liberty Mutual asserted were installed incorrectly." [Id. at ¶ 20.] The HTI Defendants allege the drawings requested in the March 2019 Discovery Request included drawings of the couplings. They allege Liberty Mutual responded to the March 2019 Discovery Request on May 17, 2019, and produced drawings of couplings that were the original design – not the final or redline drawings. [Id. at ¶¶ 20-21.] The HTI Defendants also allege that, at the time of the April 26, 2021 agreement between Liberty Mutual and the HTI Defendants to settle the 2018 Lawsuit ("Settlement

4

Agreement"), HTI believed the final design for the couplings were what was produced in response to the March 2019 Discovery Request, and the HTI Defendants were not given the redline or final drawings at that time. [Id. at ¶¶ 22, 24-25.]

The Second Amended Counterclaim expands upon the allegations that Liberty Mutual was aware of the redline drawings and contains new allegations that the work done was "new," not "remedial" work that the HTI Defendants' bond money should not have paid for. See, e.g., id. at ¶ 24. First, the HTI Defendants allege that Liberty Mutual was aware of the final or redline drawings because Liberty Mutual hired The Vertex Companies ("Vertex") to make two reports: one report, completed June 18, 2018, was a termination review of BCP Construction of Hawaii, Inc.'s ("BCP") termination of the subcontract with HTI ("Subcontract"); [id. at ¶ 12;] the second report, completed February 19, 2019 ("February 2019 Report") analyzed BCP's use of Liberty Mutual's funds under the bond, [id. at ¶ 17]. The HTI Defendants contend the February 2019 Report "should have included a review of the drawings used to do the design change work," and therefore "Liberty Mutual was aware at least as of Feb. 19, 2019, that there was a set of redline drawings that changed the original design to incorporate the Detention Door Change order work, which HTI was not a party to," meaning "[w]hat BCP installed was completely different from the original

5

drawings HTI was required to install." [Id. at ¶ 21.] The HTI Defendants further allege that, even if Liberty Mutual was not aware of the redline drawings in February 2019, Liberty Mutual would have been aware of the redline drawings "[a]t the very latest" by February 2020, when the project had been completed. [Id. at ¶ 23.]

Next, the Second Amended Counterclaim contains the new allegations that the bond funds could only be used to fix mistakes made by the HTI Defendants, and not used in the manner they were used. The HTI Defendants allege that HTI's couplings were no longer required for the system under the Change Order redesign, therefore, "there was no need for any remedial work" and the "couplings were no longer required due to the design change." [Id. at ¶ 24.] The HTI Defendants contend "[t]he terms of the bond stated that the bond moneys could only be used to fix a defect caused by HTI's work." [Id. at ¶ 27.] The HTI Defendants allege "HTI's bond funds could not be used to redesign the system to incorporate new capabilities or correct design defects. In a sense, that is what BCP did and Liberty Mutual knew this." [Id. at ¶ 33.]

In their Second Amended Counterclaim, the HTI Defendants bring a claim of fraud or detrimental reliance ("Counterclaim Count I"), and add new claims of breach of fiduciary duty ("Counterclaim Count II") and willful blindness

6

("Counterclaim Count III"). In Counterclaim Count I, the HTI Defendants allege Liberty Mutual: had a duty to produce documents pursuant to the March 2019 Discovery Request that were correct and responded to the request; had a fiduciary duty to HTI to account for how the bond funds were being used; produced a set of drawings that were not the redline or final drawings in the Subcontract; concealed from HTI the redline or final drawings in the discovery process; knew HTI would rely on the drawings produced; and knew or should have known they did not produce the final drawings. Because HTI was not involved in the redesign or the review or execution of the redline or final drawings, the HTI Defendants were unaware these drawings existed. Therefore, they allege HTI relied upon the drawings Liberty Mutual produced when they entered into the 2021 Settlement Agreement. [Id. at ¶¶ 29-36.]

As such, in Counterclaim Count I the HTI Defendants allege Liberty Mutual committed fraud, HTI detrimentally relied on Liberty Mutual's misrepresentations, and HTI suffered damages as a result. [Id. at ¶¶ 35-36.] In Counterclaim Count II, the HTI Defendants allege Liberty Mutual: had a fiduciary duty to account for how the bond money that it paid to BCP was used, knew BCP was misusing bond money for work that was not corrective work, and breached its fiduciary duty to HTI. [Id. at ¶¶ 39-42.] In Counterclaim Count III, the HTI Defendants allege

7

Liberty Mutual: knew that BCP was doing corrective work beyond the scope of the Subcontract; [id. at ¶¶ 47-49;] and "consciously avoided the truth and failed to investigate the scope of work actually being performed by BCP," [id. at ¶ 50]. The HTI Defendants seek recission of the Settlement Agreement, damages, attorney's fees and costs incurred in the litigation of the counterclaim by the counterclaimants, and any other appropriate relief. [Id. at pg. 19.]

In its Motion, Liberty Mutual contends 1) Counterclaim Count I should be dismissed because the HTI Defendants fail to allege that had they received the redline or final drawings, they would not have entered into the Settlement Agreement, thereby failing to plead the reliance element of fraud, and 2) Counts II and III should be dismissed because the HTI Defendants were not granted leave to add these claims in their Second Amended Complaint. Liberty Mutual contends dismissal of all Counts should be without leave to amend and with prejudice. [Motion, Mem. in Supp. at 2-3, 9.]

## DISCUSSION

### I.   Counterclaim Count I

Liberty Mutual contends the HTI Defendants have again not pled detrimental reliance with sufficient specificity because they fail to allege they would not have entered into the Settlement Agreement had they been aware of the final or redline

drawings. [Id. at 10.] The HTI Defendants contend, in essence, that this Court can infer from their allegations that the couplings were redesigned and HTI was not involved in that redesign and were unaware the redline drawings existed, that "HTI would not have entered into the settlement agreement if they had known that the bond payment was made based upon new work, and not remedial work." [Mem. in Opp. at 9.] The issue with the HTI Defendants' argument is that this Court has repeatedly stated that detrimental reliance must be pled with specificity.

"The elements of fraud are: (1) false representations made by the defendant; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's detrimental reliance." Goran Pleho, LLC v. Lacy, 144 Hawai`i 224, 239, 439 P.3d 176, 191 (2019) (quotation marks and citation omitted). The requirements to satisfy the Federal Rule of Civil Procedure 9(b) pleading standard are identified in the 7/13 Order and will not be repeated here. See 7/13 Order, 2023 WL 4534421, at *3 (quoting In re Finjan Holdings, Inc., 58 F.4th 1048, 1057 (9th Cir. 2023); Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1145 (9th Cir. 2021)).

In the 11/14 Order, this Court stated:

> As to Liberty Mutual's contention that the HTI Defendants failed to adequately allege that, had they received the redline or final drawings, they would not have entered into the settlement agreement, Liberty Mutual is correct. This Court previously noted "[t]he HTI Defendants also fail to allege that, had they received the drawings, they would not have entered into the Settlement Agreement. That is, there are not sufficient allegations concerning detrimental reliance." 7/13 Order, 2023 WL 4534421, at *3. This defect persists in the First Amended Counterclaim: the HTI Defendants do not allege that they would not have entered into the Settlement Agreement had they received the final and/or redline drawings. Instead, the allegations of reliance remain conclusory. See First Amended Counterclaim at ¶¶ 27, 30-32; Nakamoto v. Hartley, 758 F. Supp. 1357, 1365 (D. Hawai`i 1991) ("Like the other elements of fraud, justifiable reliance must be pled with particularity." (citation omitted)).

2023 WL 7552739, at *4 (alteration in 11/14 Order). The HTI Defendants must **plead** detrimental reliance with specificity. It is insufficient to state detrimental reliance with specificity solely in their memorandum in opposition. See Nakamoto, 758 F. Supp. at 1365.

The HTI Defendants still do not allege that they would not have entered into the Settlement Agreement had they received the final or redline drawings. See Second Amended Counterclaim at ¶¶ 33-36. As such, the HTI Defendants fail to plead detrimental reliance with specificity. While the Second Amended Counterclaim contains the new allegation that HTI's bond funds could not be used to pay for "new" work, which "[i]n a sense . . . is what BCP did," [id. at ¶ 33,] this is not an allegation

10

of detrimental reliance. In spite of the additional allegations in the Second Amended Counterclaim, the HTI Defendants' only attempt to allege detrimental reliance is still their allegation that they relied upon they drawings they received by entering into the Settlement Agreement. See id. at ¶ 36. The Court has already determined that allegation, standing alone, is insufficient. See 11/14 Order, 2023 WL 7552739 at *4; 7/13 Order, 2023 WL 4534421 at *3.

The 11/14 Order specifically stated "the HTI Defendants are CAUTIONED that, if their second amended counterclaim fails to sufficiently allege detrimental reliance, their second amended counterclaim may be dismissed with prejudice." 11/14 Order, 2023 WL 7552739 at *4 (emphasis in original). Because the HTI Defendants fail to plead detrimental reliance with particularity, Counterclaim Count I is dismissed with prejudice.

**II.  Counterclaim Counts II and III**

The HTI Defendants assert Counterclaim Counts II and III for the first time without leave of court. Federal Rule of Civil Procedure 15(a) states that, other than amendment as a matter of course, a party may amend a pleading only with the opposing party's written consent or the court's leave. See Fed. R. Civ. P. 15(a)(2). After the initial Counterclaim was dismissed, the 7/13 Order specifically gave the HTI Defendants

11

leave to amend its fraud claim in its First Amended Complaint as to the defects identified in the 7/13 Order. See 7/13 Order, 2023 WL 4534421 at *4. Neither the 7/13 Order nor the subsequent 11/14 Order granted the HTI Defendants leave to plead additional causes of action. See generally 7/13 Order, 2023 WL 4534421; 11/14 Order, 2023 WL 7552739. The HTI Defendants did not plead Counts II and III in the First Amended Counterclaim, nor did the HTI Defendants allege Liberty Mutual possessed a fiduciary duty. See generally First Amended Counterclaim. If the HTI Defendants wish to assert new causes of action, they must file a motion for leave to amend their pleading. However, because the deadline to add parties and amend pleadings has passed, the HTI Defendants must also obtain an amendment of the scheduling order. See Rule 16 Scheduling Order, filed 5/15/23 (dkt. no. 33), at ¶ 2 ("All motions to join additional parties or to amend the pleadings shall be filed by October 24, 2023."); Fed. R. Civ. P. 16(b)(4) (stating a scheduling order "may be modified only for good cause and with the judge's consent"). Counts II and III are therefore dismissed without prejudice to the filing of a motion pursuant to Rule 16(b)(4) and Rule 15(a)(2).

## CONCLUSION

For the foregoing reasons, Liberty Mutual's Motion to Dismiss Defendants Hawaiya Technologies, Inc., Paul Schultz, and Mun-Won Chang's Second Amended Counterclaim, Filed December 14,

2023 [Dkt. No. 43.], filed on December 28, 2023, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as Counterclaim Count I is dismissed with prejudice, and Counterclaim Counts II and III are dismissed. The Motion is DENIED insofar as the dismissal of Counts II and III is WITHOUT PREJUDICE.

  IT IS SO ORDERED.

  DATED AT HONOLULU, HAWAII, April 1, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**LIBERTY MUTUAL INSURANCE COMPANY VS. HAWAIYA TECHNOLOGIES, INC., ET AL; CV 23-00117 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF/COUNTER DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS DEFENDANTS HAWAIYA TECHNOLOGIES, INC., PAUL SCHULTZ, AND MUN-WON CHANG'S SECOND AMENDED COUNTERCLAIM, FILED AUGUST 28, 2023**